IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COHERUS BIOSCIENCES, INC.,           )
                                     )
                Plaintiff,           )
                                     )
        v.                           )   C.A. No. 19-139 (RGA)
                                     )
AMGEN INC.,                          )   **REDACTED –**
                                     )   **PUBLIC VERSION**
                Defendant.           )

**AMGEN INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR A
DETERMINATION OF EXCEPTIONAL CASE AND AN AWARD OF FEES
<u>PURSUANT TO 35 U.S.C. § 285</u>**

Morris, Nichols, Arsht & Tunnell LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Wayne M. Barsky
Gibson, Dunn & Crutcher LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
(310) 557-8183

Christine L. Ranney
Gibson, Dunn & Crutcher LLP
1801 California Street
Denver, CO  80202
(303) 298-5700

Andrew Robb
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA  94304
(650) 849-5300

Ashbey Morgan
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201
(214) 698-3100

Wendy A. Whiteford
J. Drew Diamond
James A. High
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA  91320-1799
(805) 447-1000

Original Filing Date: December 9, 2019
Redacted Filing Date: December 17, 2019

TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDING.............................................................1

II.     SUMMARY OF ARGUMENT ........................................................................................1

III.    LEGAL STANDARDS ...................................................................................................3

IV.     STATEMENT OF FACTS ..............................................................................................4

        A.      Amgen's Request that Coherus Drop its Suit.........................................................4

        B.      The Parties' Subsequent Correspondence ..............................................................5

        C.      The Litigation Continues........................................................................................6

        D.      Coherus Finally Agrees to Dismiss its Suit............................................................8

V.      ARGUMENT ..................................................................................................................8

        A.      Amgen Is the Prevailing Party................................................................................8

        B.      Coherus Could Not Maintain its Infringement Claim in Good Faith After
                June 5, 2019........................................................................................................10

        C.      Coherus' Continued Maintenance of This Lawsuit After July 5, 2019 Was
                Wrongful and Renders This Case Exceptional......................................................13

        D.      Amgen's Attorneys' Fees Are Reasonable and Should Be Awarded. ...................15

VI.     CONCLUSION.............................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*AdjustaCam, LLC v. Newegg, Inc.*,
  861 F.3d 1353 (Fed. Cir. 2017) ................................................................................17

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ..................................................................................................12

*Chalumeau Power Sys., LLC v. Alcatel-Lucent USA, Inc. et al.*,
  No. 11-1175 (RGA), 2014 WL 5814062 (Nov. 6, 2014) .......................................19

*Former Emps. of Motorola Ceramic Prods. v. U.S.*,
  336 F.3d 1360 (Fed. Cir. 2003) ..........................................................................12, 13

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
  560 F. App'x 966 (Fed. Cir. 2014) ...........................................................................18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................................18

*Hewitt v. Helms*,
  482 U.S. 755 (1987) ............................................................................................12, 13

*Highway Equip. Co., Inc. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) ..........................................................................12, 13

*Kilopass Tech., Inc. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013) ................................................................................18

*Lefemine v. Wideman*,
  568 U.S. 1 (2012) ......................................................................................................13

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ..................................................................................18

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ..................................................................................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .......................................................................................7, 16, 19

*Power Mosfet Techs., L.L.C v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ................................................................................13

*Pragmatus Telecom LLC v. Newegg Inc.*,
    625 F. App'x 528 (Fed. Cir. 2015) ...................................................................13

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
    734 F.3d 1332 (Fed. Cir. 2013) ......................................................................18

**STATUTES**

35 U.S.C. § 102(g)(2) ............................................................................................5

35 U.S.C. § 273(a)(2) ...........................................................................................14

35 U.S.C. § 285 ......................................................................................................7

**OTHER AUTHORITIES**

Coherus BioSciences Inc., "Coherus BioSciences Reports Corporate Highlights and
    Third Quarter 2019 Financial Results," https://investors.coherus.com/news-
    releases/news-release-details/coherus-biosciences-reports-corporate-highlights-and-
    third-0................................................................................................................17

**RULES**

FED. R CIV. P. 54(d)(2)(B)(iii) ............................................................................19

## I.      NATURE AND STAGE OF THE PROCEEDING

By this motion, Amgen Inc. ("Amgen") seeks a determination under 35 U.S.C. § 285 that this case is exceptional, and an award of reasonable attorneys' fees and costs.  This motion is based on Coherus' wrongful, continued maintenance of this action between June 5, 2019—by which time Coherus knew or reasonably should have known that its infringement claims were baseless—and October 17, 2019, when Coherus first informed Amgen that Coherus intended to dismiss its claims.

## II.     SUMMARY OF ARGUMENT

Originally filed in January 2019, Coherus' lawsuit accused Amgen's AMGEVITA™ product of infringing four patents pertaining to pharmaceutical compositions of the monoclonal antibody adalimumab.  On May 3, 2019—months before any discovery was conducted by any party, and long before the parties' initial disclosures were due—Amgen voluntarily provided Coherus with confidential, internal Amgen documents establishing beyond any reasonable question that Amgen had a complete prior use defense under Section 273 of the Patent Act.  And by June 5, 2019, Amgen had responded to Coherus on the only substantive question Coherus ever raised with respect to Amgen's defense.  As of that date, Coherus actually knew, or reasonably should have known, that it could not continue to maintain its infringement claims against Amgen in good faith.

Specifically, Amgen's internal documents establish that, more than one year before the earliest possible priority date of Coherus' asserted patents, Amgen manufactured, tested and commercially used the very same composition of AMGEVITA accused of infringement.  This prior use of the claimed composition in the United States not only perfected Amgen's non-infringement defense to every claim of every asserted patent, it also established the invalidity of each of Coherus' claims under the prior invention statute, 35 U.S.C. § 102(g)(2).

Amgen specifically explained to Coherus that its claims faced an inescapable predicament: to the extent Coherus proved that the manufacture of AMGEVITA in the United States infringes one or more claims of the asserted patents, it would necessarily *also* prove Amgen's prior-use defense to those very same claims.  Had Coherus dropped its claims on or soon after June 5, 2019, or taken other steps to minimize the expense of this litigation to Amgen—such as seeking a stay of the lawsuit, or a dismissal without prejudice—this motion would not have been necessary.

Instead, Coherus continued to maintain its lawsuit, and over the following months, Amgen incurred substantial expense related to preparing its initial disclosures (including review and production of its core technical documents), drafting initial discovery requests to Coherus and third parties, preparing for the depositions of the named inventors of the asserted patents, drafting summary judgment papers on non-infringement and invalidity, drafting its invalidity contentions, interviewing witnesses, and undertaking extensive efforts to collect and produce numerous relevant documents.

Less than two weeks before the scheduled depositions of the third-party inventors—and soon after Amgen met and conferred with Coherus on the filing of an early summary judgment motion under Section 273—Coherus agreed to dismiss all of its claims with prejudice in response to Amgen's continued requests.  Those four-plus months of litigation between June 5 and October 17 were entirely unnecessary, completely avoidable by Coherus, and very expensive for Amgen.

What makes this case stand out from other litigations, and thus merits a determination of an exceptional case under Section 285, is simply this:  it was highly unusual for Amgen to lift the veil on its confidential development documents on May 3, 2019, months before it was obligated

to produce any documents at all, in an effort to provide Coherus with the facts and seek the immediate dismissal of this litigation.  And it was just as unusual for Coherus—when presented with unrefutable evidence that its claims of infringement were wholly without merit—to continue to maintain its lawsuit, at enormous expense to Amgen, before finally dismissing its claims more than five months later.

Accordingly, Amgen respectfully asks the Court to determine that this case is exceptional pursuant to 35 U.S.C. § 285, and award reasonable attorneys' fees for the limited period of time between June 5, 2019 and October 17, 2019.

## III.   LEGAL STANDARDS

Section 285 provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court has defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*  Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554 n.6 (internal quotations marks omitted).  *Octane Fitness* rejected the requirement that a litigant establish entitlement to fees under § 285 by clear and convincing evidence, instead holding that § 285 "demands a simple discretionary inquiry" that is governed by a "preponderance of the evidence" standard.  *Id.* at 557.

## IV.    STATEMENT OF FACTS

On January 24, 2019, Coherus filed this lawsuit, asserting that the manufacture of AMGEVITA in the United States infringes at least one claim of each of three Coherus asserted patents.  D.I. 1.  On March 5, 2019, Coherus filed a First Amended Complaint ("FAC," D.I. 7-2), asserting infringement of an additional patent.  Each claim in all four Asserted Patents recites a stable aqueous composition comprising adalimumab and various required (and excluded) excipients and a specified pH value or range.  For example, the First Amended Complaint summarizes an exemplary asserted claim as follows: "a stable aqueous pharmaceutical composition comprising adalimumab, a single buffer, a surfactant, and a sugar, wherein the composition is free of mannitol and has a pH of about 5 to about 6."  FAC ¶ 13.  The earliest related application identified in any of the Asserted Patents is Provisional Application No. 61/698,138, filed on September 7, 2012.

### A.    Amgen's Request that Coherus Drop its Suit

On May 3, 2019, Amgen sent Coherus a letter explaining Amgen had a complete prior-use defense under Section 273, and requesting that Coherus immediately and voluntarily dismiss its infringement case against Amgen.  Ex. A (5/3/2019 Ltr. from W. Barsky to J. Brooks).  The letter walked through three non-public, internal Amgen documents that established that the formulation of Amgen's accused adalimumab product, then referred to internally as "ABP [Amgen Biological Product] 501," was approved and in commercial use at Amgen no later than May 6, 2011, well before the earliest critical date for purposes of Section 273, September 7, 2011.  *Id.* at 2–5.  For example, the first document was a May 6, 2011 Memorandum titled "ABP 501 formulation recommendation memo for drug substance and drug product," which stated that "ABP 501 drug product is formulated with 10 mM acetate (sodium counter ion), 9.0% (w/v) sucrose, 0.1% (w/v) polysorbate 80, pH 5.2."  *Id.* at 2.  It cannot be disputed that this is the same

formulation that Coherus accused of infringement in this lawsuit.  As such, Amgen's letter explained that "to the extent Coherus is able to prove that AMGEVITA infringes any claim of the Asserted Patents, Coherus will necessarily prove Amgen's prior use defense under Section 273 under that same claim." *Id.* at 5; *see also id.* at 2–3.

Amgen's May 3, 2019 letter concluded by requesting that Coherus "immediately and voluntarily dismiss the Action." *Id.* at 6.  Amgen noted that if Coherus chose not to take Amgen's request seriously, it would "be proceeding at its own risk, and Amgen will avail itself of any and all remedies available to a party sued in a non-meritorious action, including, but not limited to, those available under 35 U.S.C. § 285." *Id.*

### B.    The Parties' Subsequent Correspondence

At Coherus' request (Ex. B (5/8/2019 Email from R. Oakes to W. Barsky) at 1), Amgen produced a section of the application for AMGEVITA submitted to the European Medicines Agency ("EMA") that shows the approved formulation for AMGEVITA, specifically, the "Formulation Development" section of the application.  Ex. C (5/16/2019 Ltr. from W. Barsky to J. Brooks) at 1.[1]  This section described ABP 501 (AMGEVITA) as "formulated with 10 mM acetate, 9.0% (w/v) sucrose, 0.10% (w/v) polysorbate 80, pH 5.2." *Id.*  This formulation is the same formulation whose manufacture Coherus accused of infringing the Asserted Patents, which, as explained again in Amgen's second letter, "is identical to the ABP 501 formulation that Amgen was using internally no later than May 6, 2011." *Id.* at 2.

In subsequent correspondence, Coherus suggested that there may be some difference between the AMGEVITA formulation recited in the May 3, 2019 memo and the approved

---

[1] Amgen explained that "[t]he confidential documents that make up the EMA application are voluminous, and most do not relate to the formulation of ABP 501 (AMGEVITA)."  Ex. C (5/16/2019 Ltr. from W. Barsky to RJ. Brooks) at 1.  It further stated that "[w]e have, however, identified certain information in the application that bears directly on the formulation of ABP 501," and that Amgen was "producing [that information] with [its] letter . . . ." *Id.*

formulation accused of infringement, because the former included "10 mM acetate (sodium counter ion)" and the latter included glacial acetic acid and sodium hydroxide.  Ex. D (5/28/2019 Ltr. from J. Brooks to W. Barsky).  In response, Amgen explained that the acetate ions of glacial acetic acid and the sodium ions of sodium hydroxide are the source of the "10 mM acetate (sodium counter ion)" specified in the May 2011 memo.  Ex. E (6/5/2019 Ltr. from W. Barsky to J. Brooks).  Following Amgen's June 5, 2019 letter, Coherus never again engaged with Amgen on the merits of Amgen's Section 273 defense.

Throughout this period, in addition to cooperating with Coherus' various document requests, Amgen agreed that Coherus could share Amgen's correspondence and confidential documents produced with Coherus' in-house counsel and expert so that they could consider the information and Amgen's continued requests that Coherus dismiss the lawsuit.  Ex. F (5/6/2019 Email from R. Oakes to W. Barsky); Ex. C (5/16/2019 Ltr. from W. Barsky to J. Brooks); Ex. E (6/5/2019 Ltr. from W. Barsky to J. Brooks); Ex. G (6/19/2019 Email from W. Barsky to R. Oakes).

### C.    The Litigation Continues

On May 30, 2019, Amgen answered the First Amended Complaint, asserting, among other defenses, that "in the event it is found that every element of any asserted claim is met by AMGEVITA, Amgen is entitled to a complete defense under 35 U.S.C. § 273 based on Amgen's prior commercial use."  Answer (D.I. 10) ¶ 71.

The Court entered the parties' Proposed Scheduling Order on June 5, 2019.  D.I. 16.  The Order set deadlines for various events, including, in 2019, the service of initial disclosures, the identification of accused products and asserted patents, the production of Amgen's core technical documents, the service of infringement contentions and invalidity contentions, and the substantial completion of document production.  *Id.* at 1–2.  At Amgen's initiative, the

6

scheduling order also included a provision regarding Amgen's intention to file an early summary judgment motion on its Section 273 defense. *Id.* at 8.

On July 2, 2019, Coherus sent Amgen a letter requesting that Amgen voluntarily produce a long list of documents supposedly relevant to Amgen's Section 273 defense. Ex. H (7/2/2019 Ltr. from R. Oakes to W. Barsky). It was clear that Amgen would not be able to comply with this request immediately. As such, Amgen responded that it would soon be proposing a draft protective order, and that it would produce additional documents once the protective order was in place. Ex. I (7/15/2019 Email from W. Barsky to R. Oakes). On August 16, 2019, Amgen produced additional documents related to the formulation of its accused AMGEVITA product. Ex. J (8/16/2019 Email from C. Ranney to R. Oakes).

In the months that followed, Amgen continued to defend itself against Coherus' infringement claims and worked to meet court-ordered deadlines. For example, Amgen drafted over 350 pages of invalidity contentions and claim charts, which were originally due October 25, 2019 (D.I. 16 at 2), showing how eight primary references anticipated and rendered obvious the asserted claims. Declaration of W. Barsky ("Barsky Decl.") ¶ 16. Amgen collected, reviewed, and redacted thousands of documents for its core technical document production, due August 16, 2019 (D.I. 16 at 2), as well as additional productions. Barsky Decl. ¶ 16. And it drafted initial disclosures and negotiated, and ultimately litigated, the protective order. *Id.*

Because it was clear that Coherus was not going to drop its lawsuit any time soon (if at all), Amgen also began drafting and preparing to file an early summary judgment motion on its prior-use defense. *Id.* ¶¶ 16, 17. For example, Amgen propounded discovery requests on Coherus, the inventors named on the Asserted Patents (Mark Manning and Robert Payne), and the contract organization that developed the claimed inventions and assigned the Asserted

Patents to Coherus, Legacy BioSciences LLC.  D.I. 36, 38, 41.  It also subpoenaed and scheduled

depositions of both of the named inventors, Drs. Manning and Payne.  D.I. 38; Ex. K (9/12/2019

Email from W. Barsky to R. Oakes).  And on September 19, 2019, Amgen sent Coherus an email

seeking to begin the meet-and-confer process on its request for leave to file an early summary

judgment motion on Amgen's prior-use defense.  Ex. L (9/19/2019 Email from W. Barsky to R.

Oakes); *see also* Ex. M (9/17/2019 Email from W. Barsky to R. Oakes) ("Amgen intends to

move forward so that it can bring an early summary judgment motion to establish those [prior-

user] rights.").

### D.    Coherus Finally Agrees to Dismiss its Suit

On October 17, 2019, more than ten months after filing its lawsuit, Coherus advised

Amgen that Coherus was "going to dismiss the Coherus v. Amgen case."  Ex. N (10/17/2019

Email from R. Oakes to W. Barsky).  The parties ultimately filed the stipulation of dismissal

with the Court on November 25, 2019 and the Court "So Ordered" it on November 26, 2019.

D.I. 52.

Between June 5, 2019 and October 17, 2019, Amgen incurred substantial expense related

to preparing its initial disclosures (including review and production of its core technical

documents), drafting initial discovery requests to Coherus and third parties, preparing for the

depositions of Coherus' two inventors, drafting summary judgment papers on non-infringement

and invalidity, drafting its invalidity contentions, interviewing witnesses, and extensive efforts to

collect, redact, and produce relevant documents.  Barsky Decl. ¶ 16.

## V.    ARGUMENT

### A.    Amgen Is the Prevailing Party

There can be no dispute that Amgen is the prevailing party in this litigation.  Amgen has

obtained a voluntary dismissal, with prejudice, of the lawsuit against it.  D.I. 52.  The "question

of the effect of a dismissal with prejudice on 35 U.S.C. § 285 is a matter of Federal Circuit law."

*Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006).  "[T]o be a

prevailing party, one must 'receive at least some relief on the merits,' which 'alter[s] . . . the

legal relationship of the parties.'"  *Former Emps. of Motorola Ceramic Prods. v. U.S.*, 336 F.3d

1360, 1364 (Fed. Cir. 2003) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of

Health & Human Res.*, 532 U.S. 598, 601, 605 (2001)) (alterations in original); *see also Hewitt v.

Helms*, 482 U.S. 755, 761 (1987).  While it is "settled law . . . that relief need not be judicially

decreed in order to justify a fee award," there must be at least the "settling of some dispute which

affects the behavior of the defendant towards the plaintiff."  *Hewitt v. Helms*, 482 U.S. 755, 761

(1987) (emphasis omitted).  "[T]he touchstone of the prevailing party inquiry must be the

material alteration of the legal relationship of the parties."  *Motorola Ceramic Prods.*, 336 F.3d

at 1368; *see also Lefemine v. Wideman*, 568 U.S. 1, 3 (2012).

Here, Coherus' infringement claims have been dismissed with prejudice, just as they

would have been had Amgen prevailed at trial or on summary judgment.  Indeed, whether the

dismissal is after trial or summary judgment on the one hand, or as the result of a stipulation on

the other, the legal effect of the dismissal is the same.  Such a dismissal is a judgment on the

merits under the law of the Federal Circuit and its legal effect is a "material alteration of the legal

relationship of the parties."  *See Highway Equip.*, 469 F.3d at 1035 (brackets omitted); *see also

id.* at 1036 ("[T]he dismissal with prejudice . . . has the necessary judicial imprimatur to

constitute a judicially sanctioned change in the legal relationship of the parties, such that the

district court properly could entertain [the defendant's] fee claim under 35 U.S.C. § 285.");

*Power Mosfet Techs., L.L.C v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) ("IR, which

had all claims against it dismissed with prejudice, is therefore a prevailing party."); *Pragmatus*

*Telecom LLC v. Newegg Inc.*, 625 F. App'x 528, 530 (Fed. Cir. 2015) (dismissal with prejudice rendered defendant the prevailing party).

### B.   Coherus Could Not Maintain its Infringement Claim in Good Faith After June 5, 2019

On May 3, 2019, Amgen voluntarily provided Coherus with confidential, internal Amgen development documents establishing that Amgen had a complete prior-use defense under Section 273 of the Leahy-Smith America Invents Act of 2011.   By June 5, 2019, Amgen had responded to the issue Coherus raised with respect to the source of the acetate buffer in the AMGEVITA formulation, and after that date, Coherus never once substantively engaged with Amgen on the merits of its Section 273 defense.   Under Section 273, a prior-use defense is available to any person who, acting in good faith, used a claimed invention in the United States in connection with an internal, commercial use more than one year before the earlier of: (A) the effective filing date of the claimed invention; or, (B) the date on which the claimed invention was disclosed to the public in a manner that qualifies for the exception from prior art under Section 102(b).   35 U.S.C. § 273(a)(2).   The prior-use defense applies to any patent issuing on or after September 16, 2011, and thus applies to each of the Asserted Patents, the earliest of which issued on December 18, 2018.

The earliest related application identified in any of the Asserted Patents is Provisional Application No. 61/698,138, filed on September 7, 2012.   The Court may assume for purposes of this motion that Coherus would have been able to establish that all of the Asserted Patents were entitled to an effective filing date of September 7, 2012.[2]   In its May 3, 2019 letter, Amgen pointed out that the relevant date for Amgen to establish prior use under Section 273 is

---

[2]   Amgen notes, however, that a third party has filed a petition for post-grant review alleging that Coherus' U.S. Patent No. 10,155,039 is not entitled to the September 7, 2012 priority date.   *See* PGR2019-00064.

presumptively September 7, 2011, one year before Coherus' earliest possible effective filing date—Coherus has never contended otherwise. Ex. A (5/3/2019 Ltr. from W. Barsky to J. Brooks) at 2.

The documents Amgen provided to Coherus on May 3, 2019 conclusively established that the accused adalimumab formulation was: a) approved by Amgen's management for use in AMGEVITA in *May 2011*; b) disclosed to the Food & Drug Administration ("FDA") no later than *August 2011*; and c) disclosed to EMA no later than November 2011.

The first document that Amgen provided to Coherus in May 2019 was a May 6, 2011 memorandum titled "ABP 501 formulation recommendation memo for drug substance and drug product," which reflects "approval for the proposed formulation of ABP 501," Amgen's adalimumab composition. Barsky Decl. Ex. A (5/3/2019 Ltr. from W. Barsky to J. Brooks) at 2. The memo sets forth the same formulation as the one Coherus accused of infringement in the First Amended Complaint. Specifically, the memo states that "ABP 501 drug product is formulated with 10 mM **acetate** (**sodium** counter ion), 9.0% (w/v) **sucrose**, 0.1% (w/v) **polysorbate 80**, **pH 5.2**." *Id.* at 2 (emphases added). Likewise, the First Amended Complaint alleges that AMGEVITA is formulated with "glacial **acetic** acid, or one of its constituent ions [i.e., **acetate**]," "**[s]odium** hydroxide," "**[s]ucrose**," "**[p]olysorbate 80**," and that "[u]pon information and belief, the **pH** of the Amgevita™ formulation is **between 5 and 6**." FAC ¶ 24 (emphases added).

As Amgen explained in its letter, "[e]very element of the ABP 501 formulation as of May 6, 2011 is also found in Amgen's accused product, AMGEVITA, which also has a pH of 5.2," and that as such, "[i]f Coherus proves the infringement allegations of the First Amended Complaint, it will succeed only in perfecting Amgen's prior use defense under Section 273 . . . ."

11

Ex. A (5/3/2019 Ltr. from W. Barsky to J. Brooks) at 2–3.  In other words, Amgen was using the same formulation in May 2011 as Coherus accused of infringement in 2019.  That is exactly the type of activity that the prior use defense was designed to protect.

The second and third documents that Amgen provided to Coherus are the minutes of an August 24, 2011 meeting between Amgen and FDA related to ABP 501 and a November 17, 2011 EMA memorandum entitled "Scientific Advice – ABP 501."  Like the May 6, 2011 approval memo, these documents also reflect that ABP 501 was formulated with 50 mg/mL adalimumab, acetate, sucrose, and polysorbate 80, at a pH of 5.2, as AMGEVITA still is today. *Id.* at 4–5.

These three confidential, nonpublic documents that Amgen voluntarily provided to Coherus on May 3, 2019 establish that as of at least May 6, 2011, Amgen was using the *identical formulation* that is found in Amgen's accused product, AMGEVITA, which also has a pH of 5.2. *Id.*  As such, Amgen explained that "to the extent Coherus is able to prove that AMGEVITA infringes any claim of the Asserted Patents, Coherus will necessarily prove Amgen's prior use defense under Section 273 under that same claim."  Ex. A (5/3/2019 Ltr. from W. Barsky to J. Brooks) at 5; *see also id.* at 2–3.

By at least the parties' last substantive correspondence on June 5, 2019, Coherus actually knew, or reasonably should have known, that it could not continue to maintain its infringement claims against Amgen in good faith.  Amgen put Coherus on notice that if it proceeded with its lawsuit, it "will be proceeding at its own risk."  Ex. A (5/3/2019 Ltr. from W. Barsky to J. Brooks).  But Coherus did not drop its lawsuit or take any steps to minimize expense to Amgen, and it is that fact which renders this case exceptional, as discussed in the next section.

### C.    Coherus' Continued Maintenance of This Lawsuit After July 5, 2019 Was Wrongful and Renders This Case Exceptional

The Supreme Court has defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.  This case stands out for the simple reason that Amgen has consistently sought to bring an expeditious end to this litigation, and Coherus has consistently delayed and resisted that effort, only to eventually agree to voluntarily dismiss its lawsuit after continued, substantial expenditure of fees and costs.

It was unusual for Amgen to produce its confidential, internal development documents months before any discovery was conducted by any party, and long before the parties' initial disclosures were due.  Amgen took this extraordinary step in an effort to persuade Coherus, and to obtain an expeditious end to what Amgen knew, and what Coherus eventually acknowledged, was an infringement suit that could not be maintained in good faith.  Indeed, throughout this litigation, Amgen has tried to achieve as swift an end as possible to this litigation.  And Coherus continued to resist, long after it had substantial evidence to show that Amgen's Section 273 defense was not just bluster.

With the exception of one letter in which Coherus took a scientifically untenable position, which Amgen quickly corrected (*supra* Section III.B), Coherus never engaged with Amgen on the merits of its Section 273 defense.  Instead, Coherus sent multiple requests for additional documents, none of which were as pertinent to Amgen's Section 273 defense as any document that Amgen had already provided to Coherus.  This unnecessarily and unreasonably prolonged the litigation.  Amgen has also repeatedly stated its intent to file an early summary judgment

motion on its Section 273 defense, and has sought to move the case along for that purpose. Coherus refused to agree to that early motion.

Amgen acknowledges that Coherus eventually did the right thing by voluntarily dismissing its lawsuit. But it was unreasonable—in the face of irrefutable evidence—for Coherus to continue to maintain this litigation for more than four unnecessary and expensive months.[3] The Federal Circuit has upheld fee awards based on the length of time cases were pending either before a voluntary dismissal or after an unchallenged adverse decision made further maintenance of a lawsuit baseless. *See, e.g.*, *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (upholding fee award following plaintiff's voluntary dismissal of lawsuit, based on plaintiff's continued maintenance of suit where "suit became baseless after the district court's *Markman* order"); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 F. App'x 966, 972 (Fed. Cir. 2014) ("The Gabriel plaintiffs' obdurate refusal to abandon their suit—even after being specifically warned about the obvious shortcomings in their claims—strongly supports the trial court's conclusion that they maintained this litigation in bad faith."). This is the case even if it is assumed that Coherus had a reasonable basis to file its lawsuit in the first instance. *See, e.g.*, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1345 (Fed. Cir. 2013) ("[W]hen information gleaned from discovery or the court's rulings make clear that the continued pursuit of litigation is frivolous or vexatious, fees may be warranted **even where the filing of the initial complaint was arguably justified**.") (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d

---

[3] Around the time of the parties' dismissal discussions, Coherus was apparently negotiating a license agreement with Pfizer that included the Asserted Patents, which Coherus announced on November 6, 2019. Coherus BioSciences Inc., "Coherus BioSciences Reports Corporate Highlights and Third Quarter 2019 Financial Results," https://investors.coherus.com/news-releases/news-release-details/coherus-biosciences-reports-corporate-highlights-and-third-0 (last accessed December 6, 2019). Although Amgen is concerned that Coherus delayed the dismissal of this litigation precisely because of ongoing discussions with Pfizer, that is not one of the bases of this motion.

907, 915–919 (Fed. Cir. 2012) (emphasis added)); *MarcTec*, 664 F.3d at 919 ("MarcTec's decision to continue the litigation after claim construction further supports the district court's finding that this is an exceptional case.").

### D.   Amgen's Attorneys' Fees Are Reasonable and Should Be Awarded

Amgen requests that the Court exercise its discretion and award Amgen the attorneys' fees it was forced to incur defending itself against Coherus' infringement claims, from the date Coherus knew or reasonably should have known those claims were meritless, to the date Coherus agreed to dismiss its lawsuit with prejudice. *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("[I]t is clear that the aim of § 285 is to compensate a defendant for attorney's fees it should not have been forced to incur."); *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) ("[W]here, as here, a prevailing party has obtained excellent results, his attorney should recover a fully compensatory fee.") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal quotation marks omitted)).

Amgen is seeking attorneys' fees for a narrow period of time, specifically tailored to address only Coherus' delay in dismissing its suit from the point it reasonably knew or should have known that it could no longer maintain the suit in good faith in the face of Amgen's prior-use defense.  The award of fees for a limited period of time in this case would deter plaintiffs from unnecessarily prolonging a meritless lawsuit as Coherus did here, and incentivize defendants to act forthrightly and responsibly, as Amgen did here. *Octane Fitness*, 572 U.S. at 554 n.6 (recognizing "the need in particular circumstances to advance considerations of compensation and deterrence").

Rule 54(d)(2)(B)(iii) requires motions for attorney's fees to "state the amount sought or provide a fair estimate of it." FED. R CIV. P. 54(d)(2)(B)(iii).  From June 5, 2019, when Coherus knew or reasonably should have known that its claims were meritless, through October 17, 2019,

when Coherus agreed to dismiss the case, Amgen incurred an estimated $900,000 in attorneys' fees.  Barsky Decl. ¶ 18.   Amgen expects to incur an estimated $75,000 in attorneys' fees for this motion and its subsequent reply.   Amgen will provide supporting evidentiary material according to the schedule the Court may direct in light of the circumstances of this case.[4]

## VI.    CONCLUSION

For the foregoing reasons, Amgen respectfully requests that the Court award the amount of fees for the limited time period requested, subject to proof.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

OF COUNSEL:

Wayne M. Barsky
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
(310) 557-8183

Christine L. Ranney
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO  80202
(303) 298-5700

Andrew Robb
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304
(650) 849-5300

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

---

[4]  The Advisory Committee notes on the 1993 Amendment to Rule 54 state that "[t]he rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees.  This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case.  What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)."   *See also Chalumeau Power Sys., LLC v. Alcatel-Lucent USA, Inc. et al.*, No. 11-1175 (RGA), 2014 WL 5814062, *3 (Nov. 6, 2014) (ordering accounting after declaration of exceptionality).

Ashbey Morgan
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201
(214) 698-3100

Wendy A. Whiteford
J. Drew Diamond
James A. High
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA  91320-1799
(805) 447-1000

December 9, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 17, 2019, upon the following in the manner indicated:

Robert M. Oakes, Esquire                                   *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Juanita R. Brooks, Esquire                                 *VIA ELECTRONIC MAIL*
W. Chad Shear, Esquire
Megan A. Chacon, Esquire
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
*Attorneys for Plaintiff*

Dexter J.S. Whitley, Esquire                               *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA  30309
*Attorneys for Plaintiff*


                                        */s/ Jack B. Blumenfeld*

                                        _____
                                        Jack B. Blumenfeld (#1014)