IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COHERUS BIOSCIENCES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 19-139-RGA |
| v. | ) |
| | ) |
| AMGEN INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Presently before the court post-judgment[1] in this patent infringement action is a motion to declare this case exceptional under 35 U.S.C. § 285, filed by defendant Amgen Inc. ("Amgen"). (D.I. 55)[2]  Plaintiff Coherus Biosciences, Inc. ("Coherus") opposes the motion. (D.I. 61)  For the following reasons, Amgen's motion is DENIED.

## II.   BACKGROUND

Coherus initiated the present litigation against Amgen on January 24, 2019, asserting causes of action for infringement of three Coherus patents: U.S. Patent Nos. 10,155,039 ("the '039 patent"), 10,159,732 ("the '732 patent"), and 10,159,733 ("the '733 patent"). (D.I. 1)  On March 5, 2019, Coherus amended its complaint to add a cause of action for infringement of U.S. Patent No. 10,207,000 ("the '000 patent;" collectively with the '039, '732, and '733 patents, the "patents-in-suit"). (D.I. 7)  The patents-in-suit relate to "stable aqueous compositions

---

[1] On November 26, 2019, Judge Andrews entered an Order granting with prejudice the parties' stipulation of dismissal. (D.I. 53)  For purposes of the "exceptional case" analysis, the Order dismissing the case pursuant to Rule 41(a)(1)(A)(ii) is the equivalent of a judgment. *See Keith Mfg. Co. v. Butterfield*, 955 F.3d 936, 940 (Fed. Cir. 2020) (holding that "treating a voluntary stipulation with prejudice as a judgment for purposes of attorney's fees under Rule 54 will not invite parties to engage in piecemeal appellate litigation.").
[2] The briefing and declarations associated with the pending motion for attorneys' fees and costs are found at D.I. 56, D.I. 57, D.I. 61, D.I. 62, D.I. 63, and D.I. 69.

comprising adalimumab as the active ingredient and other components as inactive ingredients."
(D.I. 7 at ¶¶ 9, 11, 13, 15)

The amended complaint alleges that Amgen's AMGEVITA® product infringes the patents-in-suit.  (D.I. 7 at ¶¶ 25-65)  AMGEVITA® is a biosimilar adalimumab composition used to treat inflammatory diseases, including rheumatoid arthritis, psoriatic arthritis, ankylosing spondylitis, axial spondyloarthritis, plaque psoriasis, Crohn's disease, and ulcerative colitis.  (*Id.* at ¶¶ 18, 23)  Amgen answered the amended complaint on April 18, 2019, representing that its commercial AMGEVITA® product contains adalimumab as the active ingredient and uses excipients including "glacial acetic acid, sucrose, polysorbate 80, and water for injection," with "sodium hydroxide . . . used for pH adjustment."  (D.I. 18 at ¶ 23)  The amended complaint states that Amgen manufactured AMGEVITA® in the United States for sale in Europe beginning in October 2018.  (D.I. 7 at ¶¶ 19-22)

On May 3, 2019, Amgen sent a letter to Coherus representing that Coherus' success on its infringement allegations will only serve to prove Amgen's prior use defense under 35 U.S.C. § 273.  (D.I. 57, Ex. A)  The letter identifies the filing of Provisional Application No. 61/698,138 on September 7, 2012 as the earliest application related to the patents-in-suit and, based on this filing date, an earliest effective filing date of September 7, 2011 is assumed.[3]  (*Id.* at 2)  Attached to Amgen's letter were three internal, non-public documents, the first of which shows commercial use of Amgen's AMGEVITA® product no later than May 6, 2011.  (*Id.*)  On May 8, 2019, Coherus asked Amgen to produce the full application submitted by Amgen to the European Medicines Agency ("EMA") for AMGEVITA®, noting an apparent discrepancy

---

[3] Coherus does not dispute that Amgen would have to establish its commercial use of the AMGEVITA® formulation on or before September 7, 2011, one year before the effective filing date of the patents, to prevail on its prior use defense.  (D.I. 61 at 1)

2

between the formulation described in the internal documents attached to the May 3, 2019 letter and the commercial AMGEVITA® formulation. (D.I. 57, Ex. B)

On May 16, 2019, Amgen produced a portion of the EMA application for AMGEVITA® that allegedly showed the commercial formulation of AMGEVITA® was the same as the internal formulation identified in the EMA application and used no later than May 6, 2011. (D.I. 57, Ex. C) In the accompanying letter, Amgen represented that neither the internal formulation nor the commercial AMGEVITA® formulation includes mannitol, citrate and phosphate buffers, or sodium chloride. (*Id.*, Ex. C at 2)

Coherus responded by letter on May 28, 2019, suggesting that there may be differences between the formulation identified in Amgen's internal documents and the formulation accused of infringement. (D.I. 57, Ex. D) In particular, Coherus observed that the commercial AMGEVITA® formulation contained glacial acetic acid and sodium hydroxide, which were not identified as components of the internal formulation. (*Id.*, Ex. D at 3) Coherus explained that Amgen could not prevail on a prior use defense based on a formulation different from the one accused of infringement. (*Id.*, Ex. D at 4)

Amgen responded in a June 5, 2019 letter, representing there was no substantive difference between the formulations. (D.I. 57, Ex. E) Specifically, Amgen indicated that glacial acetic acid was the source of the acetate buffer in both the internal and commercial formulations of AMGEVITA®. (*Id.*, Ex. E at 1) Amgen also represented that sodium hydroxide was a component of its formulation prior to September 7, 2011 which was the source of the sodium counter ions used to formulate the acetate buffer. (*Id.*, Ex. E at 1-2) Amgen's June 5, 2019 letter attached the table of contents for the EMA application and encouraged Coherus to confirm the representations made in the letter with Dr. Mark Manning, a named inventor of the patents-in-

suit. (*Id.*) However, the June 5, 2019 letter did not include documentary support for the representations made therein. (*Id.*)

Also on June 5, 2019, Coherus retained Dr. Ralph Tarantino as a pharmaceutical formulation expert consultant. (D.I. 63 at ¶¶ 2-5) After reviewing the communications and the four documents produced by Amgen, Dr. Tarantino indicated he could not confirm the commercial AMGEVITA® formulation was the same as the formulation described in the internal documents. (D.I. 63 at ¶¶ 6-9) Accordingly, Coherus sent a letter to Amgen on July 2, 2019 requesting the production of certain sections of the EMA application and other documents identified by Dr. Tarantino as potentially relevant to Amgen's prior use defense. (D.I. 57, Ex. H; D.I. 63 at ¶ 10) On July 15, 2019, Amgen represented that it would produce additional documents once a protective order was in place. (D.I. 57, Ex. I)

Thereafter, the parties stipulated to extend the time to apply for a protective order and raised a discovery dispute regarding the scope of the protective order. (D.I. 21; D.I. 24; D.I. 27) The protective order was ultimately entered on September 4, 2019, and Dr. Tarantino agreed to the terms of the protective order on September 5, 2019. (D.I. 39; D.I. 62, Ex. E; D.I. 63 at ¶ 12) Amgen produced some core technical documents regarding the formulation of AMGEVITA® on August 16, 2019 to outside counsel only, prior to the entry of the protective order. (D.I. 57, Ex. J; D.I. 62, Ex. L) Dr. Tarantino was not able to review those documents until September 20, 2019, after the expiration of the period for Amgen to object to the disclosure of its confidential information to Dr. Tarantino. (D.I. 63 at ¶ 13; D.I. 62, Ex. L) Following his review of the documents, Dr. Tarantino informed Coherus' outside counsel on September 27, 2019 that he believed Amgen had likely developed the commercial AMGEVITA® formulation prior to September 7, 2011. (*Id.* at ¶¶ 14-15)

On October 17, 2019, Coherus informed Amgen that it intended to dismiss the lawsuit. (D.I. 57, Ex. N; D.I. 62, Ex. F)  The parties filed a stipulation to dismiss the action with prejudice pursuant to Rule 41(a)(1)(A)(ii) on November 25, 2019.  (D.I. 52)  The court entered an order dismissing the case with prejudice on November 26, 2019.  (D.I. 53)  On December 9, 2019, Amgen filed the instant motion for attorneys' fees and costs pursuant to 35 U.S.C. § 285, estimating that it incurred attorneys' fees in the amount of $900,000 for the period between June 5, 2019, when Amgen informed Coherus by letter that its position was meritless, and October 17, 2019, when Coherus agreed to dismiss the case.  (D.I. 56 at 15-16; D.I. 57 at ¶ 18)  Amgen also estimates it is owed an additional $75,000 in attorneys' fees for briefing on the instant motion. (D.I. 56 at 16)

## III. LEGAL STANDARD

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court has defined "an 'exceptional' case [as] simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  When considering whether a case is exceptional, district courts are to exercise their discretion on a case-by-case basis, considering the totality of the circumstances. *Id.*  Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (internal quotation marks omitted).  Cases which may merit an award of attorney fees include "the rare case in which a party's unreasonable conduct—while not

5

necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees" or "a case presenting either subjective bad faith or exceptionally meritless claims." *Id.* at 546. A movant must establish its entitlement to attorneys' fees under Section 285 by a preponderance of the evidence. *Id.* at 557.

## IV.   ANALYSIS

Coherus does not dispute Amgen's position that Amgen is the prevailing party following Coherus' dismissal with prejudice of its patent infringement claims.[4] *See Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1036 (Fed. Cir. 2006) ("[T]he dismissal with prejudice . . . has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [the defendant's] fee claim under 35 U.S.C. § 285."). Thus, the only issue is whether the case is exceptional. The court must evaluate the totality of the circumstances to determine whether this case warrants exceptional status under Section 285.

### A.   Good-Faith Basis for Litigation After June 5, 2019

In support of its motion to declare the case exceptional, Amgen alleges that Coherus demonstrated bad faith by maintaining this suit after Amgen sent a letter to Coherus on June 5, 2019 disclosing the significance of its internal development documents in support of Amgen's prior use defense. (D.I. 56 at 10-12) Specifically, Amgen contends that the internal documents

---

[4] The Federal Circuit recently confirmed that a stipulation of dismissal with prejudice under Rule 41(a)(1)(A)(ii) is equivalent to a "judgment" for purposes of 35 U.S.C. § 285, reasoning that "treating a voluntary stipulation with prejudice as a judgment for purposes of attorney's fees under Rule 54 will not invite parties to engage in piecemeal appellate litigation." *See Keith Mfg. Co. v. Butterfield*, 955 F.3d 936, 940 (Fed. Cir. Apr. 7, 2020). Where, as here, "the bases of an attorney's fee motion rest on issues that had not been meaningfully considered by the district court," the court should offer a full explanation of its assessment of the strength of the claims. *Munchkin, Inc. v. Luv n' Care, Ltd.*, 2020 WL 3041266, at *4 (Fed. Cir. June 8, 2020) (citing *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019)).

6

showed Amgen's use of the AMGEVITA® formulation as of May 6, 2011, more than one year prior to the earliest related patent application filed by Coherus on September 7, 2012.  (*Id.*)

In response, Coherus contends that it reasonably sought additional information on Amgen's prior use defense to determine whether the formulation developed by Amgen prior to September 7, 2011 was the same as the commercial AMGEVITA® formulation accused of infringement, as required for Amgen to prevail on its prior use defense.  (D.I. 61 at 15-17)  Coherus argues that it was entitled to take further discovery instead of accepting Amgen's attorney arguments regarding the formulations at face value.  (*Id.* at 16)

The court is not persuaded that Coherus' position on the merits of Amgen's Section 273 prior use defense was objectively unreasonable considering the early stage of the litigation and the limited discovery available to Coherus.  The record reflects that, based on publicly available information, Coherus believed AMGEVITA®'s excipients were glacial acetic acid, sucrose, polysorbate 80, water for injection, and sodium hydroxide.  (D.I. 7, Exs. F-G)  But the May 2011 product development memorandum produced by Amgen represents that the internal prior use formulation was "formulated with 10mM acetate (sodium counter ion), 9.0% (w/v) sucrose, 0.1% (w/v) polysorbate 80, pH 5.2." (D.I. 57, Ex. A at AMG-COH_00000002)  Based on this new and limited information, it was reasonable for Coherus to explore whether a difference in the prior use and commercial formulations existed that would overcome Amgen's Section 273 defense.

Despite the fact that Coherus' May 28, 2019 letter set forth specific concerns regarding apparent discrepancies between the prior use and commercial formulations, Amgen's response on June 5, 2019 included no documentary evidence supporting its position that glacial acetic acid and sodium hydroxide were used as excipients to generate sodium acetate in the prior use

formulation used before September 7, 2011.  (D.I. 57, Exs. D & E; D.I. 63 at ¶ 7)  Coherus was therefore within its rights to further explore whether the glacial acetic acid and sodium hydroxide in the commercial formulation amounted to a substantive departure from the prior use formulation.  For the reasons discussed in more detail at § IV.B, *infra*, Coherus' timely retention of Dr. Tarantino as an expert was reasonable to test the merits of Amgen's position and the substantive strength of its own response before agreeing to dismiss the case with prejudice.  *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010) ("[E]xpert testimony may be critical, for example, to establish the existence of certain features in the prior art." (citing *Koito Mfg. Co., Ltd. v. Turn–Key–Tech, LLC,* 381 F.3d 1142, 1152 n. 4 (Fed. Cir. 2004)).

While it may have been apparent to Amgen from the outset that Coherus' position lacked merit, Coherus had only the four internal documents voluntarily produced by Amgen to decipher the basis for Amgen's prior use defense.  Accordingly, Coherus retained Dr. Tarantino to evaluate the documents produced by Amgen on the very same day it received Amgen's June 5, 2019 letter.  (D.I. 63 at ¶ 5; D.I. 57, Ex. E)  Dr. Tarantino initially shared Coherus' concern that a potential discrepancy existed between the prior use formulation and commercial formulation based on the four internal documents produced by Amgen: "Based on the information I reviewed, I could not conclude that the commercial formulation of AMGEVITA® was the same as the formulation described in the four internal Amgen documents I was provided."  (D.I. 63 at ¶ 7)  As a result, Dr. Tarantino identified a specific list of documents and evidence that would help him evaluate the merits of Amgen's prior use argument.  (D.I. 63 at ¶ 10)  Even though Dr. Tarantino's investigation ultimately resulted in Coherus' concession that Amgen was likely to prevail on its prior use defense, it was not unreasonable to pursue a limited document production and a targeted expert analysis to confirm Amgen's position.  *See SFA Sys. v. Newegg, Inc.*, 793

F.3d 1344, 1348 (Fed. Cir. 2015) (concluding that "it is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." (quoting *Octane Fitness*, 134 S. Ct. at 1756)).

Amgen argues that Coherus' position is exceptional because it is irrelevant whether the acetate buffer was made from glacial acetic acid or another source where both the prior use formulation and the formulation claimed in the patents-in-suit include a "buffer," "single buffer," and/or "acetate buffer." (D.I. 69 at 6-7) But Amgen's June 5, 2019 correspondence with Coherus does not state that the source of the buffer is irrelevant. (D.I. 57, Ex. E at 1-2) Instead, Amgen's June 5, 2019 letter insists that glacial acetic acid is the source of the buffer in both the prior use formulation and the commercial formulation, without including supporting documentation proving this representation.[5] (*Id.*)

---

[5] In its reply brief, Amgen highlights its representation in the June 5, 2019 letter that "the acetate ions of glacial acetic acid and the sodium ions of sodium hydroxide are the source of the '10 mM acetate (sodium counter ion)' specified in the May 2011 memo." (D.I. 69 at 4) Amgen then suggests that it "could have offered additional documentary evidence, a representation to Coherus under oath, and/or immediate deposition of an Amgen representative" if it had only known proof of this fact was "the only thing standing in the way of dismissal." (*Id.*) The court notes that Coherus' May 28, 2019 letter consists of four pages focused solely on the possible lack of glacial acetic acid and sodium hydroxide in the prior use formulation based on the four documents provided to Coherus on May 3, 2019. (D.I. 57, Ex. D) Coherus took the position that Section 273 would not apply if the formulations were different:

> In view of the information above, it appears that the commercial formulation of AMGEVITA™ is comprised of different components than the internal ABP 501 formulation, and is thus a different formulation. We note that your May 3 letter states there is "no material difference" between the internal ABP 501 formulation and the commercial formulation of AMGEVITA™, suggesting that there are differences between the two formulations. 35 U.S.C. § 273 provides a defense based on prior use of the specific subject matter accused of infringement. Because the internal ABP 501 formulation is not the same as the commercial formulation of AMGEVITA™ accused of infringement, 35 U.S.C. § 273 is inapplicable.

(*Id.* at 4) (internal citations omitted). The May 28, 2019 letter goes on to expressly request additional documentation substantiating Amgen's position: "To properly evaluate Amgen's

Amgen also takes issue with Dr. Tarantino's representation that sodium chloride could provide a source of sodium counter ions. (D.I. 69 at 4-6; D.I. 63 at ¶ 8) Dr. Tarantino observed that the asserted claims of the patents-in-suit expressly require the absence of sodium chloride, so the presence of sodium chloride as a sodium counter ion in the prior use formulation would defeat Amgen's Section 273 defense. (*Id.*) Amgen contends that it could have quickly disproved the presence of sodium chloride in the prior use formulation if Coherus had shared Dr. Tarantino's theory that sodium chloride might be the source of the sodium counter ion in the buffer.[6] (D.I. 69 at 4) But Dr. Tarantino's theory also could have been refuted by producing documents requested by Coherus showing that sodium hydroxide, and not sodium chloride, was the source of the sodium counter ion forming the buffer in the prior use formulation. *See* n.3, *supra*. Amgen's decision not to include this evidence with its June 5, 2019 letter does not render Coherus' continued pursuit of the evidence exceptionally meritless.

Although Amgen argues that Coherus' theories and arguments were objectively meritless, the court must view the totality of the circumstances when reaching a determination of

---

highly unusual request, Coherus needs, at a minimum, additional information from the EMA application for AMGEVITA™ as we previously requested." (*Id.*) Amgen attached the table of contents of the EMA application to its June 5, 2019 correspondence in accordance with Coherus' request. (D.I. 57, Ex. E) Nonetheless, the June 5, 2019 letter did not include any documentary proof that the prior use formulation contained glacial acetic acid and sodium hydroxide as the source of the sodium counter ion. (*Id.*) It is unclear to the court how Amgen arrived at the conclusion that including documentary proof with its June 5, 2019 letter was not necessary to advance its goal of dismissal.

[6] Amgen argues that "Coherus and Dr. Tarantino are careful not to argue that sodium chloride rather than sodium hydroxide could have been used to make [the acetate] buffer," and the documents produced on May 3, 2019 prove that sodium chloride could not be used for any other purpose. (D.I. 69 at 5) But Dr. Tarantino's declaration does not suggest that sodium chloride could have been used for a purpose other than the sodium counter ion: "Sodium chloride will also provide a source of sodium counter ions when dissolved in solution. If, for example, sodium chloride were used in Amgen's formulation prior to September 7, 2011, it would be a source of sodium counter ions in that formulation." (D.I. 63 at ¶ 8) Amgen refers back to attorney arguments made in the June 5, 2019 letter to suggest that sodium chloride as a sodium counter ion could not be used in the acetate buffer. (D.I. 69 at 5) (citing D.I. 57, Ex. E at 1-2).

10

exceptional case status. *See Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In this case, Coherus presented its theories and arguments in correspondence to Amgen based on the four documents at its disposal. (D.I. 57, Ex. D) Coherus did not present its theories and arguments in a dispositive motion or other filing seeking substantive relief from the court. Instead, the record reflects that Coherus sought to test Amgen's prior use defense and obtain additional evidence before agreeing to dismiss the case with prejudice at the earliest stages of the litigation. Although Coherus did not ultimately prevail on its interpretation of the formulation data, Coherus' position regarding Amgen's Section 273 defense during the relevant time period was not so unreasonable as to warrant an award of exceptional case status pursuant to Section 285.

### B. Continued Maintenance of Litigation Through October 17, 2019

Amgen argues that Coherus' maintenance of the suit was exceptional because Coherus continued to request additional documents instead of acknowledging the merits of Amgen's Section 273 defense based on its confidential, internal development documents. (D.I. 56 at 13-14) According to Amgen, the documents it produced on May 3, 2019 were irrefutable, and the expenses incurred between June 5, 2019 and October 17, 2019 were therefore unnecessary. (*Id.* at 14)

In response, Coherus contends that it reached out to Amgen on multiple occasions to further explore the merits of the prior use defense, and delays in the analysis of Dr. Tarantino were caused by Amgen's refusal to permit access to confidential information until September 2019. (D.I. 61 at 16-18) Once Dr. Tarantino was permitted to evaluate the documents, Coherus alleges that it agreed to voluntarily dismiss the suit with prejudice in a timely manner to prevent the accrual of further expenses. (*Id.* at 16-17) In contrast, Coherus notes that Amgen insisted on

11

proceeding with discovery and incurring the associated expenses while Coherus was completing its prior use analysis. (*Id.* at 19)

Coherus' continued maintenance of the litigation for the period from June 5, 2019 to October 17, 2019 does not warrant a finding of exceptional case status. The record reflects that Coherus took steps early in the litigation to minimize expenses by declining to serve early requests for production, interrogatories, or requests for admission, and by agreeing to extend the deadlines for infringement and invalidity contentions. (D.I. 40; D.I. 49; D.I. 50) Moreover, Coherus retained Dr. Tarantino as an expert to evaluate the merits of Amgen's prior use defense upon receipt of Amgen's June 5, 2019 letter. (D.I. 63 at ¶ 5) Dr. Tarantino timely provided his initial assessment based on the four documents produced on May 3, 2019, (*id.* at ¶¶ 6-10), and he recommended dismissal of the action during a September 27, 2019 telephone call shortly after receiving access to the other documents he requested from Amgen, (*id.* at ¶¶ 11-15).[7] During the call, Dr. Tarantino represented that Amgen "had likely developed" the commercial AMGEVITA® formulation prior to September 7, 2011, even though none of the documents he received on September 20, 2019 "conclusively showed" that the commercial AMGEVITA® formulation was developed before that date. (*Id.* at ¶ 14) The record does not support Amgen's position that Coherus took an unnecessary length of time to evaluate the merits of Amgen's prior use defense.

The record also reflects that Amgen's aggressive litigation strategy added to the expenses incurred while Coherus evaluated the merits of the prior use defense. Amgen acknowledges it "has consistently informed Coherus that it intended to move forward with its Section 273 defense

---

[7] Viewing the totality of the circumstances, it cannot be said that this case "stands out" because Amgen voluntarily produced documents early in the case which caused Coherus to seek an expert review of the formulations described in those and supplemental documents before effectively conceding the prior use defense. *See Octane Fitness*, 572 U.S. at 554.

to bring Coherus' suit to an expeditious end." (D.I. 69 at 7) True to its word, Amgen pursued extensive discovery in preparation for early summary judgment practice despite Coherus' repeated representations that it was evaluating the merits of Amgen's Section 273 defense and further discovery may be unnecessary. (D.I. 57 at ¶ 17; D.I. 62, Exs. K & L)

During the relevant time period, Amgen drafted its invalidity contentions and claim charts, produced its core technical documents and other documents, drafted its initial disclosures, prepared to subpoena and depose the named inventors of the patents-in-suit, interviewed witnesses, and negotiated and litigated the protective order and ESI order. (D.I. 57 at ¶ 16) Coherus suggested Amgen should delay its third-party subpoenas to the named inventors pending Coherus' evaluation of the merits of Amgen's prior use defense, but Amgen served the subpoenas, seeing no "connection between such discovery on the one hand, and Amgen's Section 273 defense on the other." (D.I. 62, Ex. K) Amgen articulated its "eager[ness] to move forward with discovery into its defenses," (*id.*), and it pursued an accelerated schedule for the substantial completion of document production in October 2019, in advance of the December 6, 2019 deadline set forth in the scheduling order, (*id.*, Ex. L; D.I. 16 at ¶ 5(b)). Amgen cited its intention to use the document discovery to brief its early summary judgment motion, which it originally suggested would be filed in May 2020. (D.I. 62, Ex. L) Amgen's choice to pursue an aggressive litigation strategy cannot be attributed to Coherus for purposes of the Section 285 analysis.

Amgen cites several cases in support of its argument that Coherus unnecessarily maintained the litigation for more than four months before agreeing to a voluntary dismissal. (D.I. 56 at 14-15) But these cases are distinguishable from the circumstances presently before the court because each of the cited cases addressed a plaintiff's continued maintenance at a more

13

advanced stage of the litigation, after the issuance of adverse court rulings highlighting the weaknesses of the plaintiff's positions. *See, e.g.*, *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (concluding that plaintiff's suit "became baseless after the district court's *Markman* order[.]"); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 F. App'x 966, 972 (Fed. Cir. 2014) (awarding exceptional case status where plaintiffs maintained the suit after district court's order requiring plaintiffs to post $800,000 bond due to the evidentiary deficiencies in plaintiffs' case even after "investigating their claims for several years."); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1345 (Fed. Cir. 2013) (denying a motion for exceptional case status despite the district court's claim construction ruling favoring the defendant); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) ("MarcTec's proposed claim construction was so lacking in any evidentiary support that assertion of this construction was unreasonable and reflects a lack of good faith. And, MarcTec's decision to continue the litigation after claim construction further supports the district court's finding that this is an exceptional case."). In contrast, Coherus' maintenance of the instant litigation for less than five months after Amgen's June 5, 2019 letter allowed it to pursue limited discovery to test the merits of Amgen's assertions, after which Coherus promptly agreed to a voluntary dismissal with prejudice prior to any substantive rulings by the court. Although Coherus did not ultimately prevail in the litigation, its efforts to obtain further discovery confirming Amgen's prior use defense over the course of approximately five months do not render this case exceptional.

## V. CONCLUSION

For the foregoing reasons, Amgen's motion to declare the case exceptional under 35 U.S.C. § 285 is DENIED. (D.I. 55) An Order consistent with this Memorandum Opinion shall issue.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Opinion under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Opinion should be redacted, the parties shall jointly submit a proposed redacted version by no later than **June 18, 2020**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Opinion issued.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: June 11, 2020

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE